# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**MITCHELL BOYD,**

                    **Plaintiff,**                    **3:14-cv-1316**
                                                      **(GLS)**

        **v.**

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

                    **Defendant.**

_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Lachman, Gorton Law Firm              PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN            SERGEI ADEN
United States Attorney               Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Mitchell Boyd challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Boyd's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

In January 2008, Boyd filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since October 29, 2007. (Tr.[1] at 21A, 70-72, 96-99, 345.) After his applications were denied, (*id.* at 363-68), Boyd requested a hearing before an Administrative Law Judge (ALJ), which was held on November 2, 2009, (*id.* at 31-33, 273-94). On January 6, 2010, the ALJ issued an unfavorable decision denying the requested benefits. (*Id.* at 10-21.) After the Appeals Council's subsequent denial of review, (*id.* at 782-85), Boyd commenced an action in Federal

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

District Court and, on consent of the parties, the matter was remanded for further administrative proceedings, (*id.* at 355-58, 369-71). Thereafter, the Appeals Council remanded the case back to the ALJ who, on April 10, 2013, again denied Boyd's claim following an additional hearing held on February 19, 2013. (*Id.* at 320-39, 373-77, 830-62.)[2] This became the Commissioner's final determination upon the Appeals Council's denial of review. (*Id.* at 297-304.)

Boyd commenced the present action by filing his complaint on October 28, 2014 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 8, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

### III. Contentions

Boyd contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 12 at 11-24.) Specifically, Boyd claims that the ALJ: (1) erred in rendering his residual functional capacity (RFC) determination; and (2) improperly determined

---

[2] The Appeals Council also instructed the ALJ to consolidate Boyd's 2008 claims with his subsequent DIB and SSI applications, filed while his appeal of the ALJ's unfavorable decision was pending. (Tr. at 376, 406-07, 800-05.)

that he was capable of performing work which exists in significant numbers in the national economy. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 13 at 5-16.)

## IV. <u>Facts</u>

The court adopts the undisputed factual recitations of the parties and the ALJ. (Dkt. No. 12 at 1-11; Dkt. No. 13 at 1-2; Tr. at 326-39.)

## V. <u>Standard of Review</u>

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. <u>Discussion</u>

## A. <u>RFC Determination</u>

---

[3] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[4] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Boyd makes two arguments pertaining to the ALJ's RFC determination. First, he contends that the ALJ erred in failing to include nonexertional limitations stemming from his carpel tunnel syndrome (CTS), shoulder, knee, and back impairments in the RFC determination. (Dkt. No. 12 at 11-17.) Next, Boyd claims that the ALJ erred in determining his mental RFC. (*Id.* at 17-22.) For the reasons that follow, the court disagrees.

1.   *Nonexertional Limitations Due To Physical Impairments*

According to Boyd, the ALJ erred in failing to include the limitations

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

caused by his CTS, namely, limitations in his ability to finger and handle objects.  (Dkt. No. 12 at 11-16.)  Additionally, Boyd argues that the ALJ should have included limitations in his ability to reach, bend, climb stairs, squat, push, and pull, as these limitations are caused by his shoulder, knee, and back impairments.  (*Id.* at 16-17.)  The Commissioner counters, and the court agrees, that the ALJ considered all of Boyd's impairments, reasonably weighed the evidence before her, and thoroughly explained the reasoning that led her to her RFC determination.  (Dkt. No. 13 at 7-13.)

The ALJ concluded that Boyd retained the ability to lift and carry ten pounds occasionally and less than ten pounds frequently, sit for four hours, stand for four hours, and perform all other exertional activities occasionally. (Tr. at 330.)  The ALJ further determined that Boyd must change positions every two hours, can understand and carry out simple instructions, frequently respond appropriately to supervision, coworkers, and usual work situations, and frequently deal with changes in a routine work setting.  (*Id.*) In making this determination, the ALJ relied on portions of the January 2013 opinion of treating nurse practitioner Cori Pane as well as the March 2012 opinion of consultative examiner Marilee Mescon.  (*Id.* at 333-34.)

The ALJ's decision to omit restrictions on Boyd's ability to finger and

handle from the RFC determination is supported by substantial evidence. In particular, Dr. Mescon noted that Boyd's arm and hand pain caused by his CTS was greatly reduced by medication. (*Id.* at 661.) Boyd reported to Dr. Mescon that he was still able to use buttons and zippers, write with a pen, pick up a coin from a flat surface, and tie his shoelaces. (*Id.*) Dr. Mescon's examination of Boyd's arms and hands revealed no clinical findings, rather, he had full motor strength in both of his arms, full grip strength, and intact hand and finger dexterity. (*Id.* at 664.)[5] Based on her examination, Dr. Mescon opined that Boyd suffered no functional limitations in his ability to use his arms or hands. (*Id.* at 665.) While Boyd cites evidence that he suffers from CTS as well as clinical findings which are inconsistent with those of Dr. Mescon, (Dkt. No. 12 at 11-16), "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58,

_____

[5] Boyd erroneously contends that Dr. Mescon found 4/5 motor strength in Boyd's "right upper arm and lower leg." (Dkt. No. 12 at 9.) In fact, Dr. Mescon found 4/5 motor strength in Boyd's "right upper and lower leg," but 5/5 motor strength in Boyd's right and left arms. (Tr. at 664.) The court also notes Boyd's contention that Dr. Mescon's report is "highly questionable," in part, because she repeatedly refers to Boyd as a female. (Dkt. No. 12 at 9.) After reviewing Dr. Mescon's report, which explicitly notes that Boyd is "a [forty-five]-year-old male," the court concludes that Dr. Mescon's use of the words "she" and "her" was an inadvertent typographical error and is of no moment. (Tr. at 661.)

59 (2d. Cir. 2013). For instance, Boyd points to the 2008 consultative examination by Justine Magurno, which revealed that Boyd had a diminished ability to use a zipper, tie a bow, or use velcro with his right hand. (Tr. at 157.) However, these findings are inconsistent with Boyd's own reports to Dr. Mescon, in March 2012, about his ability to use his hands. (*Id.* at 661.) Thus, it was reasonable for the ALJ to discount Dr. Magurno's opinion that Boyd's ability to perform fine motor activities was moderately limited. (*Id.* at 157, 331.)

Boyd also takes issue with the ALJ's reliance on physician Irwin Rosenberg's opinion, which failed to include any limitations for handling or fingering. (*Id.* at 266-70, 331.) Dr. Rosenberg conducted an independent orthopedic examination of Boyd in October 2009, at the request of Boyd's counsel. (*Id.* at 266.) Boyd complained of back and knee problems, and Dr. Rosenberg concluded that Boyd suffered limitations in his ability to walk, squat, and lift more than five pounds. (*Id.* at 266-67.) He opined that Boyd would be able to perform only "extremely sedentary work." (*Id.* at 267.) He did not, however, note any complaints, findings, or limitations with respect to Boyd's arms or hands, which fact the ALJ relied on in discounting Dr. Magurno's opinion with respect to such limitations. (*Id.* at

8

266-67.)  Boyd argues that, because Dr. Rosenberg was not considering Boyd's hand issues, his opinion cannot offer support to the ALJ's RFC determination.  (Dkt. No. 12 at 12.)  Contrary to this argument, the court concludes that it was reasonable for the ALJ to consider that the report of Boyd's own medical expert makes no mention of arm or hand pain.  The court notes that treating physician Daniel Gaylon opined that such pain was likely orthopedic in nature, and Dr. Rosenberg performed an orthopedic examination.  (Tr. at 266, 654-55.)  Further, Dr. Magurno's opinion as to Boyd's reduced ability to use his arms and hands was based on her diagnoses of right neck pain that radiated to his arm and right shoulder pain.  (*Id.* at 157.)  The fact that Dr. Rosenberg failed to note any complaints of neck, arm, or hand pain or limitations flowing therefrom, ostensibly because Boyd failed to make such complaints to Dr. Rosenberg, is inconsistent with the restrictive opinion of Dr. Magurno.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion.").[6]

_____

[6] Boyd contends that "it is particularly enlightening . . . that [the ALJ] determine[d] that Dr. Rosenberg['s opinion] should be credited as to something he never looked at[,] while his opinion in all respects as to the physical problems that he did review . . . should be given no weight."  (Dkt. No. 16 at 1.)  On the contrary, the ALJ did not "credit" Dr. Rosenberg's opinion as to Boyd's ability to use his hands and arms, but rather, noted that Dr. Rosenberg's failure to find any orthopedic impairments that caused limitations in Boyd's ability to use his hands and

Boyd argues that the ALJ improperly found his daily activities inconsistent with his allegations of limited ability to perform fine motor activities, because there was no evidence that he could perform such activities with the frequency required by sedentary work.  (Dkt. No. 12 at 14.)  Standing alone, Boyd's daily activities, which include smoking, playing video games, making and selling music CDs, doing occasional odd jobs,[7] and playing cards, do not create an independent basis for finding that Boyd could perform fine motor activities on a regular and continuing basis.  (Tr. at 291, 466, 544, 662.)  However, it was reasonable for the ALJ to consider such activities as one factor among many in determining Boyd's RFC.  (*Id.* at 332-33, 334); *see* 20 C.F.R. § 404.1545(a)(3) (declaring that, in assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence").

Boyd also argues that the ALJ improperly assessed the February 2013 opinion of nurse practitioner Pane.  (Dkt. No. 12 at 15-16.)  In January 2013, Pane who treated Boyd for his low back pain and CTS,

---

arms was inconsistent with Dr. Magurno's opinion.  (Tr. at 331, 332.)

[7] Boyd testified that, since his alleged onset date, he sometimes performed odd jobs, such as painting, to earn money.  (Tr. at 291.)

completed a questionnaire and opined that, due to low back pain, Boyd

would need multiple rest periods every hour of the workday, as well as

have a high rate of absenteeism, and moderate limitations in concentration

and work pace. (Tr. at 702.) Further, Pane reported that Boyd did not

suffer any side effects from his medications, can sit for four hours and

stand or walk for four hours in a workday as long as he can change

positions every two hours, and can lift up to ten pounds frequently, and

more than ten pounds occasionally. (*Id.* at 703.) Thereafter, in February

2013, Pane completed a second questionnaire and opined that, due to

CTS, Boyd could use his right hand and arm to reach, handle, and perform

fine motor activities for only one-third of the work day. (*Id.* at 723.) The

ALJ credited the sitting, standing, and lifting restrictions of Pane's January

2013 opinion, but discounted the portions of his opinion with respect to

concentration and ability to sustain work pace because they were not

supported by his treatment notes, which consistently indicated that Boyd's

low back pain was relieved with medication. (*Id.* at 334, *see id.* at 611,

614, 616, 619, 622, 625, 627, 630, 635, 688, 690, 693, 695, 699.)

Additionally, the ALJ discounted Pane's February 2013 opinion because he

failed to note CTS as one of Boyd's disabling impairments in his January

2013 opinion, Pane's treatment notes only contained his opinion that Boyd was restricted in his ability to lift, and Pane's February 2013 opinion was inconsistent with the clinical findings and opinion of Dr. Mescon as well as Boyd's daily activities. (*Id.* at 334.) Instead of the restrictions suggested by Pane, the ALJ concluded that Boyd was limited by CTS only in his ability to lift and carry. (*Id.* at 335.)

Nurse practitioners, such as Pane, are not "acceptable medical sources" whose medical opinions may be entitled to controlling weight, but rather are considered "other sources" whose opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *Crysler v. Astrue*, 563 F. Supp. 2d 418, 434-35 (N.D.N.Y. 2008). Social Security Ruling 06-03p dictates that the opinions of "other sources," including nurse practitioners, be evaluated by the same factors as acceptable medical sources under 20 C.F.R. § 404.1527(c). *See* 71 Fed. Reg. at 45,595. According to Boyd, the ALJ failed to apply these regulatory factors or give good reasons for discounting Pane's February 2013 opinion. (Dkt. No. 12 at 15-16.) However, a review of the ALJ's decision reveals that this

argument is without merit.  The ALJ clearly considered the "supportability" and consistency of Pane's opinion.  20 C.F.R. § 404.1527(c)(3)-(4). Moreover, it is evident from the ALJ's direct citation to Pane's treatment notes, (Tr. at 333), that the nature and duration of Pane's treatment relationship with Boyd was properly considered.  As it is clear that she properly applied section 404.1527(c), the ALJ did not err in failing to methodically discuss each individual factor, and her assessment of Pane's opinions is legally sound.  *See* SSR 06-03p, 71 Fed. Reg. at 45,595-96 ("Not every factor for weighing opinion evidence will apply in every case.").

Further, Boyd argues that there is no adverse medical opinion to those of Dr. Magurno and Pane, and, as such, the ALJ was required to accept the limitations they proffered.  (Dkt. No. 12 at 16.)  However, Dr. Mescon considered Boyd's CTS diagnosis, examined his arms and hands, and opined that Boyd's only functional limitation was with respect to respiratory irritants.[8]  (Tr. at 661-65.)  Moreover, Dr. Mescon's report notes Boyd's own acknowledgment that he can use his hands for fingering and

---

[8] Dr. Mescon opined that Boyd suffered no limitations in his ability to sit, stand, climb, push, pull, or carry.  (Tr. at 665.)  The ALJ gave this opinion "some weight," but credited the sitting, standing, and carrying restrictions contained in nurse practitioner Pane's opinion in crafting her RFC determination.  (*Id.* at 334.)

handling.  (*Id.* at 661.)  Thus, this medical opinion supports the ALJ's conclusion that Boyd did not suffer any manipulative limitations.  (*Id.* at 335.)  Boyd's implicit argument that, because Dr. Mescon did not specify that Boyd is not limited in his ability to handle and finger objects, her opinion did not support the ALJ's RFC determination is misguided.  *Cf. Yablonski v. Comm'r of Soc. Sec.*, No. 6:03-CV-414, 2008 WL 2157129, at *6 (N.D.N.Y. Jan. 31, 2008) (explaining that the opinion of an examining physician that fails to note any specific limitations caused by a claimant's obesity supports an ALJ's decision that obesity did not cause any functional limitations).

Finally, Boyd argues that the ALJ improperly failed to include nonexertional limitations caused by his back and knee impairments.  (Dkt. No. 12 at 16-17.)  Boyd cites to his repeated complaints to his treatment providers that his low back and left knee pain were aggravated by bending, climbing stairs, and twisting.  (*Id.*)  Further, Boyd points out the clinical findings of Drs. Magurno and Rosenberg.  (*Id.* at 17.)  While such evidence supports Boyd's claims of limitation, the ALJ relied instead on the opinion and exam results of Dr. Mescon.  (Tr. at 334.)  On examination by Dr. Mescon, Boyd was able to fully squat, walk on his heels and toes, change

14

for the exam and get on and off the exam table without assistance, and rise from a chair without difficulty. (*Id.* at 663.) Based on this examination, Dr. Mescon found that Boyd suffered no exertional or nonexertional limitations caused by his back and knee impairments, and explicitly opined that Boyd suffered no limitation in his ability to climb. (*Id.* at 665.) Because the ALJ provided sufficient reasons, grounded in the evidence before her, for discounting the opinions of Drs. Magurno and Rosenberg[9] and rendering her RFC determination, her decision is legally sufficient and supported by substantial evidence. (*Id.* at 330-35.)

## 2. *Mental RFC Determination*

Boyd further contends that the ALJ's mental RFC determination is not supported by substantial evidence because it is inconsistent with Boyd's treatment notes and the opinion of consultative examiner Thomas Ryan. (Dkt. No. 12 at 17-22.) The court disagrees.

At step two of the sequential evaluation, the ALJ determined that Boyd suffered from a severe mental disorder, which had been variously

---

[9] Notably, Dr. Rosenberg's opinion that Boyd is not able to stand for even two hours a day, can never lift any weight at all, and suffers fatigue and concentration problems as a side effect of his medications is inconsistent with nurse practitioner Pane's opinion. (Tr. at 269, 702-03.)

characterized throughout the medical evidence.  (Tr. at 327.)  The ALJ

concluded that Boyd's mental impairment caused no restrictions in his

activities of daily living, moderate difficulties in social functioning, and

moderate difficulties in concentration, persistence, and pace.  (*Id.* at 329.)

In rendering her RFC determination, the ALJ noted Boyd's own reports that

he could care for his personal needs, prepare food, clean laundry, shop,

use public transportation, socialize, play cards, watch movies, follow

spoken instructions, finish what he starts, and get along with people in

positions of authority.  (*Id.* at 335.)  The ALJ also considered the fact that

Boyd's treating social worker suggested he partake in Vocational and

Educational Services for Individuals with Disabilities, indicating her opinion

that Boyd could work.  (*Id.*)  Further, the ALJ considered the fact that Boyd

stopped attending counseling in January 2011 because things were going

well and did not return to counseling until December 2011, which was his

last counseling session of record.  (*Id.* at 336.)  The ALJ also relied on the

opinion of medical consultant E. Kamin, who reviewed Boyd's treatment

records and consultative examination report in March 2012, and opined

that, despite his moderate limitations in certain areas of functioning, Boyd

remained capable of performing a job with simple tasks.  (*Id.*)

Based on the foregoing, the ALJ concluded that Boyd can, on a sustained basis, understand, carry out, and remember simple instructions, frequently respond appropriately to supervision, coworkers, and usual work situations, and frequently deal with changes in a routine work setting. (*Id.* at 330.) At step five, the ALJ relied on the testimony of a vocational expert (VE), as well as Social Security Ruling 85-15, to determine that Boyd's mental functional limitations would not prevent him from performing a successful adjustment to other work in the national economy. (*Id.* at 337-38); *see* 1985 WL 56857, at *4 (Jan. 1, 1985) (explaining that unskilled jobs "ordinarily involve dealing primarily with objects, rather than with data or people").

Boyd argues that the ALJ's failure to include moderate limitations in certain areas of mental functioning as a part of the RFC determination is inconsistent with the opinion of Dr. Kamin, and, therefore, unsupported by substantial evidence. (Dkt. No. 12 at 18-19, 21-22.) Dr. Kamin completed a check-the-box mental RFC assessment form and reported that Boyd was "not significantly limited" in his ability to remember locations and work-like procedures, understand, remember, and carry out short and simple instructions, perform activities within a schedule and maintain regular

17

attendance, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior, be aware of normal hazards, and travel in unfamiliar places or use public transportation. (Tr. at 680-81.)  Dr. Kamin further noted that Boyd was "moderately limited" in his ability to maintain attention and concentration for extended periods, sustain an ordinary routine, work in coordination with others without being distracted, perform at a consistent pace, interact appropriately with the general public, accept instructions and criticism from supervisors, get along with coworkers, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  (*Id.*)  In the narrative part of his assessment, Dr. Kamin noted Boyd's treatment history and consultative examination, and explained that Boyd has "moderate limitations and could perform a job in which he would have simple tasks." (*Id.* at 682.)

The ALJ placed "great weight" on this opinion, and included limitations in her RFC determination accordingly.  (*Id.* at 330, 336.) Although the ALJ did not use the term "moderate" to describe Boyd's mental functional limitations, she did in fact include limitations pertaining to

18

the areas of unskilled work[10] that Dr. Kamin's opinion indicated would be limited by Boyd's mental impairment.  (*Id.* at 330, 680-81.)  Based on the opinion of Dr. Kamin, who is deemed to be a qualified expert in the field of social security disability evaluation, *see Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010), as well as Boyd's daily activities and treatment history, it was reasonable for the ALJ to conclude that, although Boyd was somewhat limited in his ability to respond to supervision, co-workers, and usual work situations, as well as deal with changes in a routine work setting, he was still capable of performing a wide range of unskilled work. *See, e.g.*, *McIntyre v. Colvin*, No. 3:12-CV-0318, 2013 WL 2237828, at *4 (N.D.N.Y. May 21, 2013) ("When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical [posed to the VE] to include only unskilled work sufficiently accounts for such limitations." (internal quotation marks and citation omitted)).  Further, Boyd's argument that Dr. Kamin's opinion

---

[10] Social Security Ruling 96-9p provides that the mental activities generally required by competitive, remunerative, unskilled work are: understanding, remembering, and carrying out simple instructions; making simple work-related decisions, responding appropriately to supervision co-workers and usual work situations, and dealing with changes in a routine work setting.  *See* 61 Fed. Reg. 34,478, 34,483 (July 2, 1996).

was too vague for the ALJ to rely on in rendering her RFC decision, (Dkt. No. 12 at 21), is unconvincing.  S*ee Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superceded by statute on other grounds*, 20 C.F.R. § 404.1560(c)(2) (explaining that, while the opinions of treating or consulting physicians need not be reduced to any particular formula, an ALJ may not rely on such opinions if they are so vague as to render them useless).  Unlike *Curry*, the medical opinion relied on here adequately supports the ALJ's conclusion that Boyd can perform the nonexertional requirements of unskilled work.  *See id.*

Boyd also argues that the ALJ erred in affording greater weight to the opinion of Dr. Kamin than the opinion of consultative examiner Ryan.  (Dkt. No. 12 at 19-20.)  Dr. Ryan diagnosed Boyd with schizoaffective disorder and opined that he had moderate limitations in his ability to maintain attention and concentration, learn new tasks, make appropriate decisions at times, relate adequately with others, and deal with stress.  (Tr. at 657-60.)  The ALJ gave this opinion "some weight" because it was based on only one examination and not entirely supported by the medical evidence of record.  (*Id.* at 336.)  As the Commissioner points out, (Dkt. No. 13 at 14-15), opinions of nonexamining sources can be given great weight, even

overriding the opinions of treating sources, provided that they are supported by evidence in the record. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *Florez v. Apfel*, No. CV 97-3052, 1998 WL 760334, at *6-7 (E.D.N.Y. Aug. 31, 1998).

A review of the record here supports the ALJ's conclusion that the longitudinal medical evidence is not wholly consistent with the results of Dr. Ryan's examination. For instance, nurse practitioner Pane's treatment notes often included a psychiatric assessment, all of which were benign. (Tr. at 612, 615, 617, 621, 623, 626, 628, 631, 636, 686, 691, 694, 696, 700.) While many of these notes merely indicate that Boyd did not suffer from any "unusual anxiety or evidence of depression," (*id.* at 612), at times Pane's notes include detailed findings, such as noting that Boyd was fully alert, with a normal affect, judgment, insight, attention span and concentration. (*Id.* at 628, 631, 636, 686.) On examination by Dr. Ryan, however, Boyd's manner of relating was poor, motor behavior was restless, attention and concentration and memory were impaired, insight and judgment were poor, cognitive functioning was below average, and he exhibited mild stammering. (*Id.* at 658-59.) On the other hand, a December 2011 treatment note from Boyd's treating social worker indicates

that he stopped mental health treatment in January 2011 because "things were going well," he was not as angry, and had developed coping skills. (*Id.* at 650-52.)  It was also noted that Boyd stopped getting his prescription medication in February 2011.  (*Id.* at 651.)  A mental status examination at that time revealed that Boyd's behavior and speech were unremarkable, memory intact, intellect average, and attention gained.  (*Id.*)  His affect was flat, however, and his mood was anxious and irritable.  (*Id.*)  These results are inconsistent with the findings of Dr. Ryan's consultative exam, although they offer some support for Boyd's complaints of mental limitations.

In sum, it was reasonable, given the medical and other evidence before her, for the ALJ to conclude that, while Boyd suffered from some mental limitations, they were not so severe as to be disabling.

**B.    Step Five Determination**

Finally, Boyd claims that the ALJ erred in determining that jobs exist in significant numbers in the national economy that he is capable of performing.  (Dkt. No. 12 at 22-24.)  Specifically, he alleges that the ALJ's errors in assessing his RFC, along with a failure to include in the hypothetical posed to the VE the handling and fingering limitations articulated by Pane, as well as the moderate limitations in attention and

concentration and social interaction articulated by Kamin, fatally undermine the step-five determination. (*Id.*) As discussed above, however, the ALJ's RFC findings were legally sound and are supported by substantial evidence. *See supra* Part VI.A. Although the hypothetical question did not include a recitation of Pane's or Dr. Kamin's proffered limitations, it appropriately encompassed the restrictions contained in the ALJ's RFC analysis. (*Compare* Tr. at 330, *with id.* at 848.) As such, the ALJ's step-five determination was free of legal error and is supported by substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE).

## C.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Boyd's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 3, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge